## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PAYPOLITAN OU,
a corporation organized
under the laws of Estonia,

       Plaintiff,

v.                                  Case No. 1:21-cv-5397

ELOISA MARCHESONI
and GIACOMO ARCARO,

       Defendants.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, PAYPOLITAN OU, a corporation organized under the laws of Estonia, sues the Defendants, ELOISA MARCHESONI and GIACOMO ARCARO, and alleges:

### Parties, Jurisdiction, & Venue

1.      This is an action for damages in excess of $75,000, exclusive of interest, attorney's fees, and costs.

2.      Paypolitan is a corporation organized under the laws of Estonia, with its principal place of business in Germany.

3.      Ms. Marchesoni is a natural person and is a citizen of New York.

4.      Mr. Arcaro is a natural person and is a citizen of New York.

5.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2) because this action is between citizens of a State, on one side, and a citizen of a foreign state, on the other, and the amount in controversy exceeds $75,000.

6.      This Court has personal jurisdiction over the Defendants because they are citizens of the State of New York.

7.      Venue in this Court is proper under 28 U.S.C. § 1391(b)(1) because the Defendants reside in this judicial district; under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this district; and under 28 U.S.C. § 1391(b)(3) because this Court has personal jurisdiction over the Defendants.

## Factual Allegations

8.      Paypolitan is financial technology company that primarily provides business-to-business payment-processing services. The EPAN token is a utility token issued by Paypolitan in connection with the provisions of its services.

9.      Nils Tharandt Ortiz is Paypolitan's Chief Executive Officer.

10.     Ms. Marchesoni is a self-styled "Crypthusiast" who holds herself out as an influencer in the cryptocurrency space. She maintains a high profile as a speaker at blockchain conferences.

11.     Mr. Arcaro is an associate of Ms. Marchesoni and participates in her cryptocurrency-related activities. Mr. Arcaro is also a high-profile figure in the cryptocurrency space and frequently serves as a jury member at blockchain conferences.

12.     On March 22, 2021, Ms. Marchesoni connected with Mr. Tharandt Ortiz through a WhatsApp[1] group called Centurion GBO to discuss potential business ventures.

13.     Ms. Marchesoni asked Mr. Tharandt Ortiz whether Paypolitan would be interested in her services in promoting, and increasing the value and awareness of, EPAN.

---

[1] WhatsApp is a multiplatform messaging application owned by Facebook that allows users to communicate via text messages and video and voice calls.

14. Ms. Marchesoni explained that she led a team of "Growth Hackers" who could generate hype for the EPAN token through various channels, including the WallStreetBets subreddit. She claimed to have access to a database of 2 million active investors to promote the EPAN token, as well as $10 million in tokens, which Marchesoni would use to buy EPAN.

15. After Mr. Tharandt Ortiz expressed interest in Ms. Marchesoni's services, she introduced him to Mr. Arcaro, who she described as the "senior growth hacker" on her team.

16. On March 23, 2021, Ms. Marchesoni created and invited Mr. Tharandt Ortiz to a new WhatsApp group titled "Nils Ortiz x Defi" for the purpose of further developing the parties' arrangement. Other members of Ms. Marchesoni's group included Mr. Arcaro; an individual by the name of "Federico" (last name unknown), who Ms. Marchesoni said "manages operations" and who also served as the administrator of the group; and another individual named Alfonso Santitoro. Marco Roemeth, Paypolitan's Chief Financial Officer, was also added to the group.

17. After initial discussions on WhatsApp, Mr. Tharandt Ortiz participated in several telephone calls with Ms. Marchesoni and her team to discuss the agreement and strategy in more detail.

18. Over the following days, the parties discussed the terms of their agreement. Specifically, Ms. Marchesoni and her team agreed that they would promote EPAN to achieve an increase in the value of EPAN to an initial value of approximately $2.40 (four times its value of $0.60 as of April 6, 2021), with an expected sustained value of $1.50 (2.5 times its then-current value).

19. The Defendants represented to Mr. Tharandt Ortiz that, to effectuate their plan, Paypolitan would need to supply 700,000 EPAN tokens, which they claimed would bolster the

legitimacy of their teams' promotional efforts. Paypolitan agreed to supply 700,000 EPAN tokens to the Defendants solely for this purpose.

20.     As compensation for their services, Paypolitan agreed that Ms. Marchesoni and her team would be entitled to payment equal to 50 percent of the sustained increase in value of the 700,000 EPAN tokens, but only if they achieved a sustained value of $1.50. Accordingly, if and only if Defendants and their associates achieved sustained value of $1.50 per token, they would be entitled to $315,000 as payment for their services, which they would be permitted to realize by retaining and/or selling some of the 700,000 EPAN tokens.[2]

21.     Because Paypolitan did not have sufficient unlocked EPAN tokens available at the time, on April 2, 2021, Paypolitan purchased a total of 811,769 EPAN tokens on the Uniswap exchange[3] at a purchase price of 235 ETH,[4,5] which included the 700,000 EPAN tokens provided to the Defendants at a purchase price of 203 ETH.

22.     Paypolitan would not have purchased the 700,000 EPAN tokens, and would have instead retained its 203 ETH, had Defendants not requested the tokens as a purportedly essential component of their promotion strategy.

---

[2] The expected compensation was calculated as follows: $1.50 (the new value of EPAN) - $0.60 (the original value of EPAN) = $0.90 (the increase in value per token) x 700,000 = $630,000 (total increase in value of the 700,000 EPAN provided) x 0.5 (rate of compensation) = $315,000.

[3] Uniswap is a decentralized platform for effecting cryptocurrency exchanges.

[4] ETH is the currency symbol for Ether, a different and more well-known type of cryptocurrency associated with the Ethereum platform.

[5] Decentralized exchanges like Uniswap often manage cryptocurrency trading using "liquidity pools": pools of paired tokens that provide liquidity for trading as between the two types of tokens involved and thereby enable the use of an algorithm to manage the relative prices of the tokens. Pools can be funded by anyone who is able to contribute two types of tokens at an initially equivalent value. Trading one type of token for another in a particular pool is referred to as "swapping."

23.     On April 6, 2021, Paypolitan transferred two tranches of 350,000 EPAN tokens to the Defendants. The Defendants confirmed receipt of the 700,000 tokens the same day.

24.     After receiving the EPAN token transfers, the Defendants began promoting EPAN tokens, resulting in the value of EPAN tokens increasing to $1.08 as of April 8, 2021.

25.     However, after achieving this increase in value, the Defendants suddenly and in breach of their agreement with Paypolitan liquidated 263,605 EPAN tokens. In doing so, they enriched themselves with 112 ETH from the Paypolitan liquidity pool.

26.     Upon information and belief, the Defendants liquidated these EPAN tokens for $284,693 inuring to their benefit.

27.     After the Defendants liquidated this large tranche of EPAN tokens, they represented to Paypolitan that they intended to organize a new promotional strategy.

28.     Paypolitan's representatives repeatedly urged the Defendants to begin this new strategy, but the Defendants failed to do so.

29.     Instead, the Defendants continued to liquidate smaller amounts of EPAN tokens over the following days.

30.     On April 11, 2021, Mr. Tharandt Ortiz demanded that the Defendants refrain from exchanging or selling any of the then-remaining 414,000 EPAN tokens.

31.     On April 12, 2021, Mr. Arcaro confirmed that the Defendants would refrain from exchanging or selling any additional EPAN tokens.

32.     Nevertheless, on May 3, 2021, the Defendants liquidated another tranche of EPAN tokens without authorization.

33.     Later that day, Mr. Tharandt Ortiz demanded the return of the then-remaining 397,789 EPAN tokens in the Defendants' possession, causing the Defendants to begin avoiding

and ignoring Mr. Tharandt Ortiz's communications.

34.     On May 12, 2021, the Defendants liquidated the remaining 397,789 EPAN tokens in their possession in breach of their agreement with Paypolitan and in contravention of the communications between the parties against any further liquidations of EPAN tokens.

35.     As a result of the large sales of EPAN tokens over a short period of time, the price of EPAN tokens cratered to $0.30, an amount far lower than the price of EPAN tokens before the Defendants induced Paypolitan to enter into this transaction. As a result of the unauthorized transactions, an additional 33 ETH was reduced from Paypolitan's liquidity pool on the Uniswap exchange.

36.     The Defendants have never returned the 700,000 EPAN tokens or repaid their equivalent value to Paypolitan.

37.     All told, the Defendants' unauthorized sales of the EPAN tokens caused damages to Paypolitan totaling 348 ETH (which, at the time of filing, is equivalent to approximately $772,918.44).

38.     The Defendants' conduct from March through May 2021 reveals that their true intent in inducing Paypolitan to transfer EPAN tokens was not to promote Paypolitan and assist with the sustained growth of EPAN tokens, but rather to engage in a short-term scheme to inflate the value of EPAN tokens and then quickly to sell EPAN tokens, which were not the Defendants' to sell, at a sizable profit for themselves.

39.     As a result of the Defendants' actions, Paypolitan has been required to engage the undersigned counsel and is obligated to pay them a reasonable fee for their services.

### Count I – Breach of Contract

40.     Paypolitan realleges and incorporates paragraphs 1 through 39 as if fully set forth herein.

41.     The parties entered into a contract whereby the Defendants and their agents would perform services to promote and increase awareness of Paypolitan's EPAN token, in exchange for compensation.

42.     Paypolitan provided 700,000 EPAN tokens to the Defendants, at their request and in accordance with the parties' agreement, to enable them to enact their strategy to promote the EPAN token. Paypolitan provided these tokens with the understanding that they would only be sold or exchanged to the extent necessary to compensate the Defendants upon completion of their services according to the parties' agreement, with the remainder to be returned to Paypolitan following completion of the promotion strategy.

43.     The Defendants breached the contract when, instead of promoting the EPAN token with a focus on a sustained increase in value, they sold the 700,000 EPAN tokens, obtaining a profit inuring to their benefit and to Paypolitan's detriment.

44.     The Defendants' unauthorized sales of the EPAN tokens caused damages to Paypolitan totaling 348 ETH.

WHEREFORE, Paypolitan demands judgment in its favor and against the Defendants for damages, interest, and costs, as well as such other and further relief as this Court deems just.

### Count II – Breach of Bailment

45.     Paypolitan realleges and incorporates paragraphs 1 through 39 as if fully set forth herein.

46.     Paypolitan delivered, and the Defendants accepted, 700,000 EPAN tokens with the intention and understanding that the Defendants were to hold the tokens solely to assist them in carrying out the parties' agreement whereby the Defendants would promote Paypolitan and EPAN.

47.     The parties understood that, upon completion of the Defendants' promotion, the Defendants would be entitled to retain and/or sell only those tokens necessary to compensate the Defendants for achieving the agreed-upon benchmark, with the remaining tokens to be redelivered to Paypolitan.

48.     Because the Defendants never achieved the agreed-upon benchmark price of $1.50, they were not entitled to retain any of the EPAN tokens and were required to return all of them to Paypolitan.

49.     The Defendants breached this bailment relationship when, instead of holding the tokens for the agreed-upon purpose and then returning them to Paypolitan, the Defendants sold the 700,000 EPAN tokens, obtaining a profit inuring to their benefit and to Paypolitan's detriment.

50.     The Defendants' unauthorized sales of the EPAN tokens in breach of the parties' bailment relationship caused damages to Paypolitan totaling 348 ETH.

WHEREFORE, Paypolitan demands judgment in its favor and against the Defendants for damages, interest, and costs, as well as such other and further relief as this Court deems just.

## Count III – Unjust Enrichment

51.     Paypolitan realleges and incorporates paragraphs 1 through 39 as if fully set forth herein.

52.     The Defendants were enriched when they received, held, and, without authorization, sold Paypolitan's 700,000 EPAN tokens.

53.     The Defendants' enrichment was at Paypolitan's expense because the Defendants sold Paypolitan's 700,000 EPAN tokens, enriching themselves by the value received from those sales and damaging Paypolitan by the loss of those EPAN tokens and the resulting impact on Paypolitan from the decrease in the market price of EPAN tokens. As a result of the unauthorized sales, Paypolitan suffered damages totaling 348 ETH.

54.     Under the circumstances, it would be against equity and good conscience to permit the Defendants to retain the value received from the sales of the 700,000 EPAN tokens.

WHEREFORE, Paypolitan demands judgment in its favor and against the Defendants for damages, interest, and costs, as well as such other and further relief as this Court deems just.

## Count IV – Fraudulent Inducement

55.     Paypolitan realleges and incorporates paragraphs 1 through 39 as if fully set forth herein.

56.     In convincing Paypolitan to transfer the 700,000 EPAN tokens, the Defendants falsely represented to Paypolitan's principal, Mr. Tharandt Ortiz, that (i) they would provide promotional services for Paypolitan and EPAN tokens, including but not limited to promoting EPAN tokens through various channels and through their network of 2 million investor contacts; (ii) their promotional services would lead to a sustained increase in the value and awareness of EPAN tokens; (iii) they would need to hold 700,000 EPAN tokens to support their promotional strategy; and (iv) the EPAN tokens would only be sold or exchanged to the extent necessary to compensate Defendants upon completion of their services according to the parties' agreement, with the remainder to be returned to Paypolitan following completion of the promotion strategy.

57.     Even after selling a large tranche of EPAN tokens, the Defendants further falsely represented to Paypolitan that they would not sell any further EPAN tokens.

58.     The Defendants knew these statements to be false because they always intended to promote EPAN tokens solely to increase the value of EPAN tokens for their own personal benefit through liquidating Paypolitan's EPAN tokens at the highest possible price.

59.     The Defendants made these representations with the intention of inducing Paypolitan to rely on them in transferring 700,000 EPAN tokens to the Defendants.

60.     Paypolitan justifiably relied on the Defendants' false representations because it believed the transfer of 700,000 EPAN tokens would facilitate the Defendants' purported promotional strategy.

61.     As a result of Paypolitan's justifiable reliance on the Defendants' false representations, Paypolitan suffered damages totaling 348 ETH.

WHEREFORE, Paypolitan demands judgment in its favor and against the Defendants for compensatory and punitive damages, interest, and costs, as well as such other and further relief as this Court deems just.

## Count V – Conversion

62.     Paypolitan realleges and incorporates paragraphs 1 through 39 as if fully set forth herein.

63.     Paypolitan had legal ownership of the 700,000 EPAN tokens transferred to Defendants.

64.     Paypolitan delivered, and the Defendants accepted, the 700,000 EPAN tokens with the intention and understanding that the Defendants were to hold the tokens solely to assist Defendants in carrying out the parties' agreement whereby the Defendants would promote Paypolitan and EPAN.

65.     Moreover, the tokens were delivered and accepted with the understanding that they would only be sold or exchanged to the extent necessary to compensate the Defendants upon completion of their services according to the parties' agreement, with the remainder to be returned to Paypolitan following completion of the promotion strategy.

66.     In liquidating the 700,000 EPAN tokens, the Defendants acted without authorization.

67.     The Defendants exercised dominion and control over the EPAN tokens, to the exclusion of Paypolitan's rights in the tokens, by liquidating the tokens.

68.     Before, during, and after the Defendants' multiple transactions to liquidate the EPAN tokens, Paypolitan demanded that the tokens not be sold and, later, demanded their return.

69.     At all times, the Defendants refused Paypolitan's demands and/or exercised dominion and control over Paypolitan's property by liquidating the EPAN tokens without authorization.

70.     As a result of the Defendants' conversion of Paypolitan's property, Paypolitan suffered damages totaling 348 ETH.

WHEREFORE, Paypolitan demands judgment in its favor and against the Defendants for compensatory and punitive damages, interest, and costs, as well as such other and further relief as this Court deems just.

### Count VI - Violation of New York Deceptive Practices Act
### (GBL § 349)

71.     Paypolitan realleges and incorporates paragraphs 1 through 39 and 56 through 61 as if fully set forth herein.

72.     In offering their services to promote Paypolitan and EPAN tokens, the Defendants engaged in consumer-oriented conduct insofar as (i) they were offering services for consumption by Paypolitan and (ii) their purported services would be directed toward consumers at large.

73.     The Defendants materially misled Paypolitan in falsely representing that they would provide promotional services for Paypolitan; would only hold the requested 700,000 EPAN tokens to further those services; and would only sell or exchange the tokens to the extent necessary to compensate the Defendants upon completion of their services according to the parties' agreement, with the remainder to be returned to Paypolitan following completion of the promotion strategy.

74.     Plaintiff suffered damages totaling 348 ETH as a result of the Defendants' materially misleading conduct.

WHEREFORE, Paypolitan demands judgment in its favor and against the Defendants for compensatory and punitive damages, interest, costs, and attorney's fees, as well as such other and further relief as this Court deems just.

## Count VII – Civil Conspiracy

75.     Paypolitan realleges and incorporates paragraphs 1 through 39, 52 through 54, 56 through 61, 63 through 70, and 72 through 74 as if fully set forth herein.

76.     The Defendants had an agreement among themselves and their associates, including but not limited to "Federico" and Alfonso Santitoro, to induce Paypolitan to transfer 700,000 EPAN tokens to the Defendants under false pretenses.

77.     Ms. Marchesoni committed several overt acts in furtherance of the agreement, including initiating communications with Mr. Tharandt Ortiz; proposing the sham promotional strategy; and connecting Mr. Tharandt Ortiz with her other associates.

78.    Mr. Arcaro committed several overt acts in furtherance of the agreement, including representing to Mr. Tharandt Ortiz that the Defendants and their team could increase the market awareness of EPAN tokens resulting in sustained growth and representing that, to successfully carry out the strategy, the Defendants and their team would need to hold 700,000 EPAN tokens.

79.    The Defendants committed these overt acts with the intention of misappropriating the 700,000 EPAN tokens.

80.    The Defendants' unlawful acts have resulted in damages to Paypolitan totaling 348 ETH.

WHEREFORE, Paypolitan demands judgment in its favor and against the Defendants for compensatory and punitive damages, interest, and costs, as well as such other and further relief as this Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, the Plaintiff, Paypolitan OU, demands a jury trial on all issues so triable.

Respectfully submitted on June 18, 2021.

ROGERS TOWERS, P.A.

By: /s/ Brian G. Kelley
    Steven D. Overly, Esq.*
    Florida Bar No. 369748
    Brian G. Kelley, Esq.*
    Florida Bar No. 106430
    1301 Riverplace Boulevard, Suite 1500
    Jacksonville, Florida 32207
    Telephone: 904-398-3911
    Facsimile: 904-396-0663
    Email addresses:    soverly@rtlaw.com
                        bkelley@rtlaw.com
    *Pro Hac Vice admission pending
    *Attorneys for Plaintiff*